THE COLUMBIA INSURANCE COMPANY OF ALEXANDRIA, PLAINTIFFS IN ERROR v. JOSEPH W. LAWRENCE, WHO SURVIVED THOMAS POINDEXTER.

There is no principle of law or of equity by which a mortgagee has a right to claim the benefit of a policy, underwritten for the mortgagor on the mortgaged property, in case of loss by fire. It is not attached, or an incident to his mortgage. It is strictly a personal contract for the benefit of the mortgagor, to which the mortgagee has no more title than any other creditor.

The mortgagee of property insured against loss by fire, is a competent witness in an action against the insurers to recover a loss, alleged to have been sustained by the destruction of the property insured.

One of the fundamental rules of an insurance company, insuring against loss by fire, provided, that any persons insured sustaining a loss by fire "shall, as soon as possible thereafter, deliver in as particular an account of their loss, or damage, signed with their own hands, as the nature of the case will admit of, and make proof," &c., " and shall procure a certificate under the hand of a magistrate," &c. " not concerned in such loss," &c., " importing that they are acquainted with the character and circumstances of the persons insured," &c.; " and until such affidavit and certificate are produced, the loss claimed shall not be payable," &c. *Held*, that the words, " as soon as possible," cannot be drawn down to fix the construction of the clause respecting the certificate. The true intent and meaning of it is, that the certificate must be procured within a reasonable time after the loss. It would be a most inconvenient course to adopt a different construction, not required by the terms of the clause or the context; as it would make the material inquiry, not the production of the certificate, but the possible diligence in proving it. The assured is not entitled to receive or to sue for the loss until the certificate is obtained; for it is a condition precedent to his right of action. The language is, " and until such affidavit and certificate are produced, the loss claimed shall not be payable." And besides, in the body of the policy it is expressly provided : " such loss and damage as the assured shall be entitled to receive by virtue of the policy, shall be paid within sixty days after notice and proof thereof made by the assured, in conformity to the conditions of the company subjoined to the policy." · So that it is manifest that the assured could not be entitled to maintain any action until he had furnished all the preliminary proofs : so that the delay is not injurious to the company, but solely to the assured, by depriving him of his right to judgment until it is procured.

In a former action against the same company, by the same plaintiff, on the same policy of insurance, " a certificate," intended to be a compliance with the requirements of the ninth fundamental article in the policy ; was left with the insurance company by the assured, and no objection was made to it at the time it was delivered, or until after suit brought on the policy, and the case was on trial before a jury. Upon a writ of error, the judgment of the court below was reversed; for error in the instructions given by the circuit court to the jury, on the trial. The plaintiffs, on the mandate of the supreme court ordering a venire facias de novo

[Columbia Insurance Company of Alexandria v. Lawrence.]

coming into the circuit court, discontinued the suit. They immediately procured and presented to the insurance company, another certificate in precise conformity with the requirements of the article. The court were of opinion that under all these facts and circumstances, the non-production of the certificate, at an earlier period, was fully accounted for, and that the proper certificate was procured within a reasonable time. The first certificate was procured shortly after the loss, and presented to the company, which then made no objection to it. The objection to it was first taken at the trial in the circuit court in the former suit. The court were then of opinion, that the previous conduct of the company amounted to evidence proper to be left to the jury, of a waiver of any objection to the certificate. The court reversed the judgment on that point; and almost contemporaneously with the annunciation of that decision, the new certificate was obtained. The non-production, then, of the proper certificate was occasioned, not by any laches properly imputable to the party, but by the omission of the company to give notice of the defect, and of the mistaken confidence placed by the party in the company itself.

The decision of this court in the case of Lawrence v. The Columbia Insurance Company, 2 Peters's Rep. 47, referred to; and the principles laid down in that case relative to representations by the assured to the assurers, re-affirmed

Whenever the nature of the interest of the assured would have, or might have a real influence upon the underwriter, either not to underwrite at all, or not to underwrite except at a higher premium, it must be deemed material to the risk: and if so, the misrepresentation or concealment of it will avoid the policy. One of the tests, and certainly a decisive test whether a misrepresentation or concealment is material to the risk; is to ascertain whether, if the true state of the property or title had been known, it would have enhanced the premium. If it would, then the misrepresentation or concealment is fatal to the policy.

In relation to insurances against fire on land, the doctrine seems to have prevailed, for a great length of time, that they cover losses occasioned by the mere fault and negligence of the assured and his servants, unaffected by any fraud or design.

A loss by fire, occasioned by the mere fault and negligence of the assured, or his servants or agents, and without fraud or design, is a loss within the policy, upon the general ground that the fire is the proximate cause of the loss; and also upon the ground that the express exceptions in policies against fire, leave this within the scope of the general terms of such policies.

The decision of this court in 2 Peters's Rep. 26, 53, 56, as to the effect of a misdescription of property insured, on the liability of insurers against loss by fire; re-affirmed.

IN error to the circuit court of the United States for the District of Columbia, in the county of Alexandria.

At January term 1829, a suit between the same parties was before this court, on a writ of error. 2 Peters 25. It was an action instituted by Lawrence, the survivor of Lawrence and Poindexter, on a policy of insurance against fire. to recover from the Columbia Insurance Company of Alexandria, the amount of a loss sustained by them by the destruction of a mill by fire; alleged to have been duly insured by the defendants. A verdict and judgment had been ren-

dered in favour of the plaintiff; and on the case coming into this court, the judgment of the circuit court of the county of Alexandria was reversed, and the case was remanded to that court with directions to award a venire facias de novo. The mandate of this court stated, that the circuit court erred in instructing the jury, that the interest of the assured in the property insured is such as is described in the original offer for insurance and in the policy : and also in this, that the said circuit court erred in this, in the opinion to the jury, that the evidence was sufficient to be left to them, from which they might infer that the defendants waived the objections to the certificate and other preliminary proof required by the ninth rule annexed to the policy.

On the coming in of the mandate, November 5th, 1830, the plaintiff in the circuit court discontinued the suit.

In September 1831, Joseph W. Lawrence, survivor of Lawrence and Poindexter, instituted another suit against the same defendants, on the same policy of insurance ; and after various pleadings and demurrers, &c. the case was tried by a jury in October 1834, and a verdict and judgment entered for the plaintiff.

The defendants excepted to the charge of the court, in two bills of exceptions ; and they prosecuted this writ of error.

The case brought up by this writ of error was in all respects the same with that which was before the court in 1829: with the exceptions fully stated in the opinion of the court.

The case was argued by Mr Jones, for the plaintiffs in error ; and by Mr Swann and Mr Berry, for the defendant.

Mr Justice STORY delivered the opinion of the Court.

This is a writ of error to the circuit court of the District of Columbia, for the county of Alexandria.

The original action was assumpsit, brought by the defendant in error against the insurance company, upon a policy of insurance, against fire underwritten by the company, on the 9th of April 1823, whereby the company insured for the defendant in error, and his partner, Poindexter (since deceased), 7000 dollars on their stone mill, called the Elba mill, four stories high, situated on an island about a mile from Fredericksburg, in Virginia. The declaration averred a total loss by fire, on the 14th of February 1824.

There was a former suit brought on the same policy, against the

company, in which the plaintiff obtained a verdict and judgment. That judgment was brought before this court on a writ of error, in January term 1829 : and the judgment was reversed. The cause will be found fully reported, with the grounds of the reversal, in the second volume of Mr Peters's Reports. (2 Peters's Rep. 26, et seq.) One of the grounds of that reversal was the omission, before the suit was commenced, to procure a certificate from a magistrate, in compliance with the ninth fundamental article of the rules of the company: upon which the policy was made ; and to which those rules were annexed, as a part of the conditions of the contract. On the 14th of February 1829 (after the reversal, and the reason thereof were made known), being five years after the loss; a new certificate was obtained from Mr Hooe, a magistrate of the county in which the mill was situated. The original suit was afterwards discontinued in the circuit court, on the 5th of November 1830. The present suit was afterwards commenced in September 1831.

In the court below, various pleas were interposed by the company, upon some of which there were issues to the country ; and others, which were special, eventuated in demurrers. Upon the former, a verdict was at the trial found for the plaintiff; and upon the latter, (as well as upon the verdict) judgment was ultimately pronounced in favour of the plaintiff. Bills of exceptions were also taken at the trial upon various points of law raised in argument ; and the correctness of the ruling of these points, raised both upon the special pleadings and upon the trial of the issues of fact, are upon the present writ of error brought before us for revision. All the leading facts of the case, except the new certificate of Hooe beforementioned, and the testimony of Joseph Howard (which will hereafter be a subject of comment, upon the inquiry as to his competency), are precisely the same as were before us upon the writ of error in 1829. And as the testimony of Howard, if admissible, does not in our opinion at all vary the operation and pressure of the point of law in the case; we deem it unnecessary to do more than to refer to the case, as reported in Peters's Reports, for all the material facts. It may be proper, however, to state, that it was then decided that there was no waiver by the company of their right to the preliminary proofs, required by the ninth article of their rules ; and that the assured had an insurable interest.

In examining the case presented by the present writ of error, we shall endeavour to strip it of the artificial and complicated form in

[Columbia Insurance Company of Alexandria v. Lawrence.]

which it comes before the court: and instead of wandering through the maze of special pleadings and exceptions with which the merits of the case are incumbered, and under which indeed they seem almost buried; we shall consider the material questions presented by the record : and afterwards briefly apply the decisions on them to the solution of the points raised by the pleadings and exceptions.

The first question naturally presented is, whether Joseph Howard was a competent witness in the suit. The original defendants (the insurance company) objected to his competency ; and the objection was overruled, and his testimony was admitted by the court. The facts relied on to establish his incompetency were these. Howard and Lawrence (the plaintiffs) had, in September 1813, purchased the premises of W. and G. Winchester; and in the conveyance it was declared, that it was subject to the payment of the annual rent of 80 pounds, and also to the payment of 6695 dollars, the balance of the purchase money due to the grantors, agreeably to certain notes given therefor by Howard and Lawrence ; and that the same sum of 6695 dollars, and the accruing interest, should be a lien on the premises, in the same manner as if a mortgage had been executed therefor. Howard and Lawrence, in May 1814, executed a deed of trust to W. J. Roberts, on the premises, to secure certain indorsers upon their notes at the Bank of Virginia, and the Farmers Bank at Fredericksburg. In July 1818, Howard made an agreement with Lawrence to convey the premises to him, at the price of 30,000 dollars ; to which amount Lawrence was to procure a release of debts due from Howard and Lawrence, and then Howard was to make a conveyance of his moiety of the premises to Lawrence, subject to the liens given to the banks (hereinafter mentioned), and to Winchester; and also the ground rent, &c. Lawrence, in November 1822, entered into a contract with Poindexter, by which the latter became interested in a moiety of the premises, and became liable to the payment of a moiety of the debts due by Howard and Lawrence to the Bank of Virginia, and the Farmers Bank, at the Fredericksburg branches, for which Howard and Lawrence had executed the deed of trust to Roberts ; and also for the debt due to Winchester, for which there was a mortgage or lien on the premises.

Lawrence and Poindexter, in February 1824, assigned the present policy on the premises to Roberts, by an instrument which states no purpose, but merely says: "that for value received, they do assign the policy to Roberts ;" to whom the said property has been conveyed, in trust, for certain purposes. It may be inferred that the object

was to subject the rights and interest secured by the policy to the trust.

It is admitted, that all these bank debts of Howard and Lawrence have been discharged, and all the liability to all their indorsers, except John Mundell deceased; who, as executor, has, by a release under seal, released Howard from all liability, by reason of the indorsements of his testator. It is suggested that this release is inoperative in point of law; because it is not competent for an executor to release such a liability to his testator. We are of a different opinion, if the transaction was bona fide and for a sufficient consideration; and there is no evidence to disprove either. So that the deed of trust has become completely functus officio: and Howard, as to the bank debts, has no interest whatsoever, to be affected by the assignment of the policy.

The debt to the Winchesters of 6695 dollars, yet remains due and unpaid; and as to this, it is insisted that there is a remaining interest in Howard, who is personally liable to the payment of it; and the proceeds of the policy, if recovered, will go, pro tanto, in discharge of that debt. Assuming that Howard is personally liable for that debt; still, unless the creditors have not merely a lien on the premises, but a lien on the policy for it, Howard has no interest which renders him incompetent in this suit. Now, we know of no principle of law or of equity by which a mortgagee has a right to claim the benefit of a policy underwritten for the mortgagor on the mortgaged property, in case of a loss by fire. It is not attached, or an incident to his mortgage. It is strictly a personal contract for the benefit of the mortgagor; to which the mortgagee has no more title than any other creditor. Lord Chancellor King, in Lynch v. Dalzell, 3 Bro. Parl. Cases 497; S. C., 2 Marshall on Insurance, b. 4, ch. 4, p. 803; took notice of this distinction, saying: "these policies are not insurances of the specific things (goods) mentioned to be insured; nor do such insurances attach to the realty, or in any manner go with the same, as incident, by any conveyance or assignment: but they are only special agreements with the persons insured against such loss or damage as they may sustain." So that in this view we are of opinion, that Howard was a competent witness and properly admitted by the court below. We have already said, that we do not perceive that the testimony given by Howard, changes in any material respect the legal posture of the case. The first exception of the insurance company was, therefore, properly overruled.

The next question which arises is, as to the proper construction of the ninth article of the fundamental rules of the insurance company. That article is in the following terms :

9. " All persons assured by this company, sustaining any loss or damage by fire, are forthwith to give notice to the company ; and, as soon as possible thereafter, deliver in as particular an account of their loss or damage, signed with their own hands, as the nature of the case will admit of, and make proof of the same by their oath or affirmation, and by their books of accounts, or proper vouchers, as shall be reasonably required : and shall procure a certificate under the hand of a magistrate or a sworn notary of the town or county in which the fire happened, not concerned in such loss, directly or indirectly, importing that they are acquainted with the character and circumstances of the person or persons insured ; and do know, or verily believe, that he, she, or they, really and by misfortune, without any kind of fraud or evil practice, have sustained by such fire loss or damage to the amount therein mentioned : and, until such affidavit and certificate are produced, the loss claimed shall not be payable : also, if there appears any fraud, the claimant shall forfeit his claim to restitution or payment by virtue of his policy."

It is contended on the part of the company : first, that the certificate from a magistrate, here provided for, is to be procured " as soon as possible ;" and that these words in the preceding clause are to be drawn down and construed to belong to the latter clause, so as to read : " and shall, as soon as possible, procure a certificate, &c." And, secondly, if this construction be not adopted, still that the certificate must be procured within a reasonable time ; and that the procurement of it after five years from the time of the loss, is not a reasonable time.

We are of opinion, that the words " as soon as possible," cannot be drawn down to fix the construction of the clause respecting the certificate. We think the true intent and meaning of it is, that the certificate must be procured within a reasonable time after the loss. It would be a most inconvenient course to adopt a different construction, not required by the terms of the clause or the context ; as it would make the material inquiry, not the production of the certificate, but the possible diligence in proving it. The assured is not entitled to receive or to sue for the loss until the certificate is obtained ; for it is a condition precedent to his right of action. The language is : " and until such affidavit and certificate are produced,

the loss claimed shall not be payable." And besides, in the body of the policy it is expressly provided : "such loss and damage as the assured shall be entitled to receive by virtue of the policy, shall be paid within sixty days after notice and proof thereof made by the assured in conformity to the conditions of the company subjoined to the policy." So that it is manifest that the assured would not be entitled to maintain any action, until he had furnished all the preliminary proofs : so that the delay is not injurious to the company, but solely to the assured, by depriving him of his right to judgment until it is procured.

The next inquiry is, whether the new certificate was procured within a reasonable time. In the ordinary course of things upon a trial before the jury, this would be a mixed question of fact and law : of law, where all the facts and circumstances were admitted or established ; of fact, where these circumstances were open for the ascertainment of the jury. In the present case, the question is directly made upon a full display of all the facts and circumstances in the special pleadings. We are of opinion, that under all these facts and circumstances, the non-production of the proper certificate at an earlier period is fully accounted for ; and that the proper certificate was procured within a reasonable time. The first certificate was procured shortly after the loss, and presented to the company ; which then made no objection to it. The objection to it was first taken at the trial in the circuit court in the former suit. The court were then of opinion, that the previous conduct of the company amounted to evidence, proper to be left to the jury, of a waiver of any objection to the certificate. This court reversed the judgment on that point ; and almost contemporaneously with the annunciation of that decision, the new certificate was obtained. The non-production then of the proper certificate was occasioned, not by any laches properly imputable to the party, but by the omission of the company to give notice of the defect; and of the mistaken confidence placed by the party in the company itself.

If the company had contemplated the objection, it would have been but ordinary fair dealing, to have apprised the plaintiff of it; for it is now obvious that the defect might have been immediately supplied. As it was, the company, unintentionally, it may be, by their silence, misled him. The delay to procure the correct certificate, was not unreasonable. This view of the matter disposes of the fourth plea.

[Columbia Insurance Company of Alexandria v. Lawrence.]

That plea is substantially defective, in averring that the ninth article of the fundamental rules required the certificate to be procured " as soon as possible," after the loss, and is a legal misconstruction of that article; and is, in other respects, objectionable, as attempting to put double matters in issue.    The replication set forth all the circumstances, which establish due diligence in procuring the certificate within a reasonable time ; and if it be bad, for the want of a proper traverse, and for any other cause set forth in the special demurrer, it leads us back to the first error : viz. a bad plea to a good declaration.    This view of the matter also disposes of the first, second and third instructions, asked of the court in the second bill of exceptions ; founded upon the supposed bar of the statute of limitations, and the certificate not having been procured in a reasonable time.

The next question which arises is, whether there has been in the proposal for the insurance, a misrepresentation of the interests of the assured in the property insured ; and if there has been, whether if that misrepresentation is material to the risk, and would have enhanced the premium ; it avoided the policy.    The proposal for insusurance describes the property and interest thus.    " What premium will you ask to insure the following property, belonging to Lawrence and Poindexter, for one year, against loss or damage by fire, on their stone mill, four stories high, covered with wood, situate, &c."    It was decided by the court, in the former case, in 2 Peters's Rep. 47, &c., that the real interest existing in Lawrence and Poindexter, at the time of the proposal, was not such as is described therein.    It was further decided by the court, in the same case, that a misrepresentation of the interest of the assured, which is material to the risk, would avoid the policy.    The language of the court on that occasion was : " the contract for insurance is one in which the underwriters generally act, on the representation of the assured ; and that representation ought, consequently, to be fair, and to omit nothing which it is material for the underwriters to know.    It may not be necessary that the person requiring insurance should state every incumbrance on his property, which it might be required of him to state if it was offered for sale.    But fair dealing requires that he should state every thing which might influence, and probably would influence the mind of the underwriter in forming or declining the contract, &c.    Generally speaking, insurances against fire are made in the confidence that the assured will use all the precautions to avoid the calamity insured against, which would be suggested by his inte-

rest. The extent of this interest must always influence the underwriter in taking or rejecting the risk, or in estimating the premium. So far as it may influence him in these respects, it ought to be communicated to him. Underwriters do not rely so much upon the principles as on the interest of the assured; and it would seem, therefore, to be always material, that they should know how far this interest is engaged in guarding the property from loss."

We think this reasoning entirely satisfactory, and founded in the true exposition of the contract of insurance. Whenever the nature of this interest would have, or might have a real influence upon the underwriter, either not to underwrite at all, or not to underwrite except at a higher premium, it must be deemed material to the risk; and if so, the misrepresentation or concealment of it will avoid the policy. One of the tests, and certainly a decisive test, whether a misrepresentation or concealment is material to the risk, is to ascertain whether, if the true state of the property or title had been known, it would have enhanced the premium. If it would, then the misrepresentation or concealment is fatal to the policy. Now, at the trial of the present case, the counsel for the insurance company, in their second bill of exceptions, prayed the court to instruct the jury, that if they "find from the evidence that a full disclosure of the actual title of the insured in the premises, as it existed at the time, was material to, and would have considerably increased the estimate and value of the risk and premium; and that no other disclosure of the same was made than as aforesaid [i. e. in the offer of insurance], then there was a material concealment, which avoids the policy." The court, being divided in opinion, did not give this instruction to the jury; and it was consequently refused. In our opinion, upon the principles already stated, it ought to have been given; and the refusal was an error for which the judgment must be reversed. But the court rightly rejected the instructions upon the same subject asked in the first bill of exceptions; which proceeded upon the ground that if there was any misrepresentation of the interest of the assured, that alone, whether material or not to the risk, would avoid the policy. The instruction asked upon the same subject, in the second bill of exceptions, is still more objectionable: as it called upon the court to declare to the jury, as matter of law, that the non-disclosure of the true nature and extent of the title and interest of the assured in the premises, was a concealment of circumstances materially affecting the risk, which avoided the policy:

thus taking from the jury the proper examination of the fact, whether it was material to the risk or not.

The next question is, whether a loss by fire, occasioned by the fault and negligence of the assured, their servants and agents, but without fraud or design on their part; is a loss for which the underwriters are liable. In regard to marine insurances, this was formerly a question much vexed in the English and American courts. But in England the point was completely settled in Busk v. The Royal Exchange Insurance Company, 2 Barn. & Ald. Rep. 82, upon the general ground that causa proxima, non remota, spectatur; and, therefore, that a loss whose proximate cause is one of the enumerated risks in the policy, is chargeable to the underwriters; although the remote cause may be traced to the negligence of the master and mariners. Although in the policy, in that case, the risk of the barratry was also assumed by the underwriters; yet it is manifest, that the opinion of the court proceeded upon the broad and general ground. The same doctrine was afterwards affirmed in Walker v. Maitland, 5 B. & Ald. 171, and Bishop v. Pentland, 7 Barn. & Cres. 219; and is now deemed incontrovertibly established. The same doctrine was fully discussed and adopted by this court in the case of The Patapsco Insurance Company v. Coulter, 3 Peters's Rep. 222.

In relation to insurances against fire on land, the doctrine seems to have prevailed, for a great length of time, that they cover losses occasioned by the mere faults and negligence of the assured and his servants, unaffected by any fraud or design. In the arguments of counsel on marine policies, it has constantly been taken for granted, both in England and America :(a) and although there is no case directly on the point decided by the highest authority; yet Lord Chief Justice Gibbs, at nisi prius, held, that if a servant by negligence sets a house on fire, the loss is recoverable on a policy against fire. Indeed, if such losses where not within such policies, the indemnity against such risks would be practically of little importance; since much the larger number of fires of this sort may be traced back to some negligence, slight or otherwise, of the members of families. The language of fire policies, too, abundantly justifies this conclusion upon the common principles of interpretation. The underwriters agree to pay "all loss or damage," which the assured may sustain by fire

(a)  See Busk v. Royal Exchange Insurance Company, 2 Barn. and Ald. Rep. 82; and Grim v. The Phœnix Insurance Company, 13 Johns. Rep. 451.

upon the property insured ; but they except from this general liability any loss or damage sustained by fire " that may happen or take place in consequence of any invasion, civil commotion, riot, or any military usurpation :" and the fundamental rules also exclude losses by earthquakes and hurricanes. The exception, then, may fairly be construed to leave all other losses, except fraudulent losses, within the reach of the policy ; upon the known maxim of law, that an exception expressly carved out of a general clause, leaves all other cases within the scope of the clause. . Fraudulent losses are necessarily excepted upon principles of general policy and morals ; for no man can be permitted, in a court of justice, to allege his own turpitude as a ground of recovery in a suit.　And, indeed, the ninth article of the fundamental rules is manifestly intended to secure the company against losses "by fraud or evil practice." We are then of opinion, that a loss by fire, occasioned by the mere fault and negligence of the assured, or his servants or agents, and without fraud or design, is a loss within the policy, upon the general ground that the fire is the proximate cause of the loss ; and also upon the ground that the express exceptions in policies against fire, leave this within the scope of the general terms of such policies.　The sixth plea is, therefore, bad in substance.

The next question which arises, is upon the supposed misdescription of the premises in the proposal for insurance, and the effect of that misdescription. It was decided by this court, in the former case ; in 2 Peters's Rep. 26, 53, 56, that the misdescription of the premises (not fraudulently made), to be such as would vitiate the policy, must, upon the true construction of the fundamental rules of the company, not only be material to and increasing the risk, but such as would occasion the insurance to be made at a lower premium than would otherwise be demanded.　If, therefore, the misdescription were material to the risk, and would increase it, but yet would not reduce the premium ; it would not avoid the policy.　And that the points as to the misdescription, as well as the effect thereof upon the premium, were matters of fact for the consideration of the jury.　We are entirely satisfied that this is the true construction of the terms and intent of the fundamental rules.　Upon this ground, we are of opinion, that the fifth plea is bad in substance ; for it puts the case wholly upon the materiality of the misdescription to the risk, without any reference to the premium.　The last instruction asked by the counsel of the company, in the bill of exceptions ; propounds the point in a

somewhat different form. It is, "that if the jury find, from the evidence, that the construction of the building, &c. was grossly misrepresented in the offer and policy, and instead of being a building with walls of stone, and with a covering or roof only of wood, the walls themselves were partly of wood; and that such actual construction of the building greatly increased the risk beyond what the insurers would have incurred, if the building had truly answered the description in the said offer and policy: then the jury ought to presume that the building was charged in the said policy at a lower premium than would otherwise have been demanded by the defendants; so as to bring the case within the operation of the last clause of the first of the said fundamental rules." If this instruction had merely asked that the jury might presume, or were at liberty to presume, &c. upon the facts and circumstances so stated, there would not have been any just objection to it. But it goes much farther, and insists that the jury "ought to presume;" &c.; which, in truth, is removing the whole matter of fact from the jury, and compelling them to decide the point as a conclusive presumption of law. This, we are of opinion, would have been wholly unjustifiable on the part of the court. The instruction called upon the court to decide, not upon a conclusive presumption of law, but upon a mere presumption of fact; a matter which exclusively belonged to the jury to consider and resolve. It is directly in the face of the decision in 2 Peters's Rep. 55, 56, upon this very point. It is obvious, from the very terms of the rules, that cases may exist, in the same class of hazards, of very different degrees of risk, from the nature and qualities of the thing insured; and yet may not increase or diminish the premium. Whether the misdescription would have any effect upon the premium must, therefore, from the very nature of the inquiry, be a matter of fact upon all the circumstances of each particular case. The instruction prayed was, therefore, properly rejected.

The judgment of the circuit court must be reversed for the error already stated; and the cause remanded, with directions to the court to award a venire facias de novo.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the District of Columbia, holden in and for the county of Alexandria, and was argued by counsel; on consideration whereof, it is the opinion of this court, that

[Columbia Insurance Company of Alexandria v. Lawrence.]

there was error in the circuit court in refusing to give to the jury the following instruction, in the second bill of exceptions mentioned, on the prayer of the counsel for the said insurance company, viz. "If the jury find, from the evidence, that a full disclosure of the actual title of the insured in the premises, as it existed at the time, was material to and would have considerably increased the estimate and value of the risk and premium, and that no other disclosure of the same was made than as aforesaid; then there was a material concealment which avoids the policy." It is therefore considered and adjudged by this court, that for the error aforesaid the judgment aforesaid be, and hereby is reversed; and that the same be remanded to the circuit court, with directions to award a venire facias de novo.