Rannet, J.
The plaintiff in error was sued in the court below for money had and received for the use of the plaintiff below. He pleaded the general issue, and gave notice of set-off; and the intervention of a jury being waived, the cause was submitted to the court, who found in favor of the plaintiff below the- sum of $612.16, for which, after overruling a motion for a new trial, they entered a judgment against the plaintiff in error, to which he duly excepted. The facts, so far as they are necessary to be stated, to a clear understanding of the questions raised, are as follows: The plaintiff in error, the defendant’s intestate, and one Jeremiah Diller, were the owners, in equal proportions, of the steamboat Columbiana. Diller was in command of the boat as captain, and running her upon the Missouri river. On September 6, 1845, he effected an insurance upon her for one month, for the sum of $2,100, in the Croton Insurance Company, at St. Louis. The policy states the insurance to be made on account of Messrs. Diller, McDonald & Black, and that the company did cause “whom it may concern to be insured, lost or not *lost,” for the period before stated. On July 15,1845, Black gave to D. & D. McDonald, the plaintiff in error, and his brother, partners, a bill of sale, by way of mortgage, upon one-sixth part of the boat, to secure the payment of a note of that date, for $530, payable in ten months. On September 10, 1845, Black gave a power of attorney to one Charles C. Stilwell, “to control, sell, or otherwise dispose of his interest, being one-third, in the steamboat Columbiana, now supposed to be up the Missouri river.” Black was at the time sick, *163 and in a few days thereafter died. After his death, Stilwell and the brother of the plaintiff, and on his behalf, went to St. Louis, and the more certainly, as he states, to effect a settlement with Diller, they concealed from him and all others the death of Black. When they arrived there they found the boat had been lost during the time covered by the policy, and the result was that the insurance company settled and paid the amount of the insurance, which, after deducting certain charges upon it by the agents of the boat, was paid over ; one-third to Diller, amounting to $539.12, and the other two-thirds to McDonald, he receiving the third belonging to Black’s interest, by the consent of Stilwell, in payment of the mortgage before referred to. The plaintiff in error also proved that since he received the money he had paid debts of said steamboat, amounting to the sum of $461.
From this state of facts, the court of common pleas were of opinion that the administrator of Black was entitled to recover said sum of $539.12, being one-third of the insurance money received, with interest, and subject to no deduction or offset, and for this they rendered judgment. It is claimed they erred for three reasons:
1. That McDonald had a right to receive the insurance money under, and by virtue of, his mortgage.
2. That he had a right to set off his advances, made for and on account of Black, on the purchase of the boat.
3. That he was entitled to set off one-third of the payments he had made for the boat’s debts.
*We will notice these several positions in the order in which they are stated.
The mortgage attached as a lien upon the boat; the mortgagor afterward effected an insurance upon it, and if the policy attached as an incident to the thing mortgaged and insured, it would seem to follow that without any special provision in the policy, the mortgagee would be entitled, upon the loss of the principal thing, to follow all the incidents that had attached to it, and subject them for his indemnity. But it is well settled that this is not the nature or character of a contract of insurance. It is a mere personal indemnity against loss to the person with whom it is made, or those falling within the scope of its provisions. As soon as the interest of such person ceases in the property, the contract is at an end, from the impossibility of any loss happening to him afterward. It is not assignable without the consent of the insurer, and *164 inasmuch as it does not attach to the property, it does not pass to the purchaser upon the sale of it.
This doctrine is clearly sustained in Wilson v. Hill, 3 Mot. 68. Shaw, 0. J., says : “An insurance of buildings against loss by fire, although in popular language it may be called an insurance of the estate, is, in effect, a contract of indemnity with an owner, or other person having an interest in the preservation of the buildings, and mortgagee, tenant, or otherwise, to indemnify him against any loss which he may sustain in case they are destroyed, or damaged by fire. If, therefore, the insured has wholly parted with his interest before they are burned, and they are afterward burned, the underwriter incurs no obligation to pay anybody.”
Again, in Powels v. Innis, 11 M. & W. 13, Lord Abinger, C. B., says: “It is a contract of indemnity only, .and nobody can recover in respect of the loss who is not really interested. The policy is 'but a chose in action, and can not pass merely by the assignment of the ship.”
But the precise question involved in this first position of the plaintiff in error has been settled by the highest authority. *In the case of the Columbia Ins. Co. of Alexandria v. Lawrence, 10 Pet. 512, Mr. Justice Story says: “ We know of no principle of law or of equity, by which a mortgagee has a right to claim .the benefit of a pplicy underwritten for the mortgagor, on the mortgaged property, in case of a loss by fire. It is not attached, or an incident to his mortgage. It is strictly a personal contract for the benefit of the mortgagor, to which the mortgagee has no more title than any other creditor.”
The same principles were affirmed in the case of Carpenter v. The Providence Washington Insurance Co., 16 Pet. 503. In this case it is said: “ Policies of insurance against fire are not deemed in this nature incident to the property insured; but they are mere special agreements with the persons insuring against such loss or damage as they may sustain, and not the loss or damage that any other person having an interest as grantee, or mortgagee, or creditor, or otherwise, may sustain by reason of the subsequent destruc-, tion thereof by fire.”
Other cases might be cited to the same purpose, but I deem it unnecessary to pursue this question further. Is there anything in this policy to take this case out of the general rule?
If is well settled at the present day, that an insurable interest *165 need not amount to a right of property, or of possession. Whenever a legal connection can be shown to exist between injury to the thing insured, and the loss to the party insuring, it will suffice, or as stated by Judge Story in Hancox v. The Fishing Insurance Co., 3 Sumner, 132 : “ The truth is, that an insurable interest is sui generis and peculiar in its texture and "operation. It sometimes exists where there is not any present property, or jus in re, or jus ad rem. . Inchoate rights founded on subsisting titles, unless prohibited by the policy of the law, are insurable ; as, for example, freight, respondentia and bottomry.” And again, by Lord Eldon, in Lucena v. Crawford, 5 Bos. & Pul. 294: “It is a right in the property,'or a right derivable out of some contract about the property, which, in either case, may be lost upon some contingency affecting the possession or.enjoyment of the property.” *Henoe it has been long settled.that both mortgagor and mortgagee have insurable interests—the mortgagee to the amount of his debt, and the mortgagor to the value of the property, since he would remain personally liable for the debt upon the destruction of the mortgaged property. It can not be doubted that the terms of this policy would have covered the interest of any person owning any part of the property at the time the insurance was effected, and who might therefore be supposed to be in contemplation of the contract. But the policy can not be said to “concern” those having insurable interest even, not amounting to a legal interest or ownership in the property, without violating the well-settled rules upon that subject. The plaintiff in error relies upon the case of Rogers v. The Howard Insurance Co., 6 Paige’s Ch. 583, as in point to sustain his position. In that case it was held that where an insurance was effected upon a boat for the benefit, and on account of whomsover it might concern at the time of loss, if any should occur, that a mortgagee of the interest of one who was an owner at the time of the insurance, and for whose benefit the policy was underwritten, had a right to the mortgagor’s portion of the insurance money, to the extent of the debt secured by the mortgage. A careful examination of this case develops two important points of difference between it and the one under consideration, which entirely destroy its value as an authority. In the first place, the policy in that case expressly provided for those concerned in the property at the time of the loss, thereby contem *166 plating and authorizing a change of ownership in the property, ■without affecting the validity of the policy.
In this case, no such liberty is given or change contemplated, but, on the contrary, it is confined expressly to those concerned at the time the insurance is effected. A few extracts from the opinion of the chancellor will show the ground upon which the decision was placed. He says:
“ The underwiters contemplated that a change of ownership of the boat might take place during the continuance of ^the risk, and intended to insure whoever might bo the owners from time to time, so that those who should be interested as such owners at the time when any loss should occur, should have the benefit of the policies;” and again, he says: “ It was unquestionably competent for the underwriters to agree to insure whoever might be the owners of the boat at the time a loss thereof should occur; so as to protect the rights of those who might succeed to the interests of the parties originally insured.” Having thus settled that a fair construction of the contract would make it inure to the benefit of whoever might be owner at the time of the loss, he proceeds to make out the mortgagee an owner at that time, as follows :
“ The mortgage having become forfeited by the failure to perform the condition, the legal title to one-fourth of the steamboat was in Stow (the mortgagee), as the owner thereof, at the time of the loss.” The case is an authority to show that nothing short of ownership and a legal title will answer the purpose, or come within the operation of the claim relied upon. There can be nothing plainer than that no such legal title or ownership existed in the plaintiff in error, either at the time the insurance was effected, or at the time of the loss. The mortgage was not forfeited, but had months yet to run after cither event, and even after the money was received. No reliance is placed upion the fact that Stilwell consented that McDonald should receive the money upon the mortgage. It is very clear that upon the death of Black, all power given to Stilwell was revoked, and his acts are consequently entirely ineffectual to bind his administrator. We think the position of the plaintiff in error, that he had a right to receive the insurance money by virtue of his mortgage, can not be sustained.
His next point is, that he had a right to set off his advances made for Black, at the time the boat was pmrchased, against this money received after his death. No such question is made by the *167 facts. Neither the hill of exceptions, or any paper referred to in it, contains any such evidence. But if it did, we do not see how the proposition could be sustained. If ^McDonald advanced money for Black, Black became his debtor for the amount. If money had come to the hands of McDonald before the death of Black, the right of set-off might have existed. The moment Black died, all his creditors had an equal right to a pro rata dividend of his property, upon which no liens existed; and it would be entirely inadmissible to hold that one creditor could got property into his hands belonging to the estate, and thus indirectly by an offset obtain the full payment of his debts, while others might receive but a part, or nothing at all. No right of offset existed in this case at the death of Black, and none could be acquired afterward by a seizure upon the assets of the estate.
The next ground is, that McDonald was entitled to offset one-third of $461, which he claimed to have paid after he received the insurance money, on debts owing by the boat. This is claimed upon the ground that Black’s interest in the boat was subject to the payment of one-third of this sum, and that an account between part-owners, is to be taken upon the principle of first discharging all debts and liabilities before anything belongs to the individual owners. In short, that there is no difference in this particular between partners and part-owners. I will give a moment’s attention to the general doctrine, and then to its application in this case.
For reasons already given, if these debts only existed against Black personally, no right of offset could be recognized. They must stand upon the same ground as all his other indebtedness. If they were a lien upon the boat, the boat being lost, it would seem to be quite as difficult to transfer the lien from the boat to the insurance money, as it would the lien of a mortgage, which we have seen can not bo done. But it is far from being clear that any such lien for advances between part-owners ever exists. In the first place, it is settled that even a majority of the owners of a ship can not incur even necessary expenses, so as to charge the minority, without their consent; and the reason, as stated by Judge Story (Story on Part. 591, sec. 422), is, “That no one part-owner has a right to compel ^another, against his will, to incur any burden or expense, even although necessary for the preservation oí the common property, but it should be left to his *168 own froo choice. For otherwise, in case one part-owner were poor, it might operate as a grievous evil, and compel him to sell his share, by a sort of forced sale.” But suppose all consent; then it is clear that all are liable in solida for the unpaid debts, and each is bound to contribute his share of all expenditures. “But,” says the same author, “ the’question may arise whether this is a mere personal charge, or whether the respective part-owners have also a lien on the ship itself, for the expenditures or charge made by them, which lion is capable of being enforced against the ship itself, in' cases of insolvency, death, or bankruptcy of a particular part-owner, or any other failure on his part to discharge his own share thereof.”
Upon this question, thus stated by the learned authority, the most eminent judges in England and America have expressed different opinions. Lord Hardwick, in the case of Doddington v. Hallet, 1 Veser, Sen. 497, held that part-owners making such advances' would have such lien—while Lord Eldon, in Ex parte Young, 2 Ves. & Beam. 242, and Ex parte Harrison, 2 Rose, 76, on great consideration, overruled the decision of Lord Hardwick, and maintained that there was no lien in such cases by the part-owners upon the shares of each other. In the last case cited, it was hold that the owners of a ship were not interested in it as joint tenants, but as tenants in common, and that the bankrupt’s share passes to the creditors under the bankruptcy, without being liable sjmcifically, by way of lien, to the claim of the other part-owners, in respect to their disbursements and liabilities for the ship. So, in Ex parte Gibson, 1 Mont. on Part. 102, note, it was hold that a bankrupt’s interest in the moiety of a vessel, was his separate property, and not hold by his assignees for the purpose of paying the joint creditors of the ship.
The case of Ex parte Parry, 5 Ves. 575, is still more nearly in point. Lord Loughborough there held that when one joint *owner of a ship insured on his own account, and became a bankrupt, while the cargo and proceeds of the voyage were joint property, the produce of the insurance on the ship which was lost, was separate property. The doctrine of these cases was adopted to the fullest extent by Chancellor Kent, in the case of Nicoll v. Mumford, 4 Johns. Ch. 525. In speaking of the decision of Lord Hardwick, before cited, he says: “I dare not, therefore, follow a case which has never had effect, and which has been so *169 authoritatively exploded. The late cases which have been referred to.are in point against the allowance of any partnership claim, or taking an account on the foot of any partnership in the vessel. As to that, they were merely tenants in common, in like manner as if they had owned in common a warehouse or other real property in New York.” This case went to the court of errors 20 Johns. 611, where the decision of the chancellor was reversed by a divided court. On the whole, I am not prepared to say that the better opinion, as well as the weight of authority, may not be in favor of the lien. I think it is. But if the rule was established, and if we could transfer the lien from the boat to the insurance money, still this case could not be brought within it. The only information furnished us by the bill of exceptions upon this point is as follows: “And further (the defendant) proved by Daniel McDonald, a witness examined in behalf of said defendant, that be, the said defendant, had, since the receipt of said insurance money by him, paid debts of said steamboat, amounting to the sum of $161.” Now, all the cases agree that the rule can only “ apply to the case of expenditures, advances, and debts, incurred on account of the ship by the part-owners, merely in their character as such, as, for example, for repairs, or for outfits for a voyage, or by discharging existing liens thereon.” Story on Part. 621, sec. 412.
How can we say that these debts were contracted after Black became a part-owner of the boat, or that he was ever liable to pay them; or, if contracted after his interest was acquired, that ho consented to it; for without such consent we *have seen that he would not be liable. Nor is there any evidence whatever furnished, that the debts were of a character to constitute a lien upon the boat.
We can not presume in favor of the plaintiff upon either of these points. The judgment must be shown to be erroneous, or we can not interfere with it. The law binds us to make all presumption in its favor.
Wo find nothing erroneous in the judgment of the court of common pleas, and it is therefore affirmed.