THOMAS B. SIMS, Respondent, *v.* STATE INSURANCE COMPANY OF HANNIBAL, MO., Appellant.

1. *Insurance, fire — Policy — Certificate of loss, sworn to by agent, when sufficient.* — It is the undoubted duty of one insured by a fire insurance company to furnish a sworn certificate of loss, where required to by the terms of the policy; and the performance of such a duty is a condition precedent to his recovery. And although ordinarily it would be a fatal objection to the certificate that it was sworn to by the agent, and not by the insured, yet proof and certificate made by an agent with whom the company had all their dealings, who was in sole possession of the property insured, and who alone knew the facts necessary to be embodied in the paper — who, in fact, was, as it were, insured as agent — is a compliance with the policy.

Even were a certificate so sworn to bad, the defect would be held to be waived where the company received the certificate, made no objection to it on that account till the case came on for trial, and long after the thirty days within which the certificate was to be furnished had expired, and, when payment was refused, placed the refusal on other grounds.

2. *Insurance, fire — Premium note — Forfeiture for non-payment at maturity, how treated.* — While the law does not forbid, it certainly will not favor, but will rather lean against, forfeiture of a fire insurance policy for want of promptness in paying a premium note.

3. *Insurance, fire — Premium note — Non-payment — Forfeiture — Acceptance of proposal — Waiver.* — On the third day after the maturity of a premium note given on a fire insurance policy, the maker, not knowing how much would be actually due the company, wrote them a letter proposing to pay, and asking for a statement of the amount. The company at once applied upon the note the amount in their hands, and directed him to remit the balance, which he did by the first mail. *Held,* that the acceptance by the company of his proposal to pay was a complete waiver of the forfeiture arising from the non-payment of the note at maturity, and that they were liable on the policy when the property was burned after such acceptance, although before the remittance was forwarded.

4. *Insurance, fire — Misrepresentation — Warranty, breach of — Business of insured — Incidents of, supposed to be known to insurer.* — In suit on a fire insurance policy, where it appeared that the insured, in his application for insurance, stated that the purpose for which the building to be insured was used was "tobacco-pressing; no manufacturing;" and that, in fact, he used an addition to the main building for manufacturing hogsheads for the tobacco, the representation would not necessarily be such a concealment of the uses of the building as to constitute a breach of warranty which would vitiate the policy. Officers of an insurance company are supposed to know all the incidents of the business of the insured, and if there is any branch of it considered extra-hazardous, and which they are unwilling to cover by their contract, it should be specially provided against. Whether the preparation of the hogsheads was such an incident to the business as to be included in it,

was a question of fact, and, if fairly presented to the jury, need not be reconsidered in this court.

In such suit the jury should be instructed to determine whether it is so generally customary for those engaged in the business of tobacco-pressing to prepare their own hogsheads, and in the building where the business is conducted, that such a preparation can properly be called an incident to the business.

### Appeal from Sixth District Court.

*Asper & Pollard*, *A. W. Lamb*, and *Lakeman & Brown*, for appellant.

I. A certificate of loss sworn to by the insured himself is a condition precedent, and must be complied with before a recovery can be had on the policy. (Mann v. Harvey, 8 Exch. 819 ; Norton v. The R. & S. M. Co., 8 Cow. 645 ; Ang. Ins., § 226 ; Noonan v. Hartford Ins. Co., 21 Mo. 81 ; 2 Pet. 25 ; 10 Pet. 507 ; Wallingford v. Home Mut. Ins. Co., 30 Mo. 46 ; 3 Kent's Com. 376, and authorities cited ; Leadbetter v. Ins. Co., 13 Me. 265 ; Ang. Ins., §§ 225, 227 ; Ætna Ins. Co. v. Tyler, 16 Wend. 385 ; Chouquette v. Barada, 28 Mo. 491 ; Farrar v. David, 33 Mo. 482.)

II. It is the province of the jury to find a waiver from the facts. But our courts have not carried the doctrine of waiver as far as did the Supreme Court of the United States and in the State of New York. (See St. Louis Ins. Co. v. Kyle, 11 Mo. 291 ; Phillips v. Protective Ins. Co., 14 Mo. 220 ; Noonan v. Hartford Ins. Co., *supra ;* Newmarks v. London Ins. Co., 30 Mo. 160 ; O'Neil v. Buffalo Ins. Co., 2 Comst. 122 ; Roumage v. Ins. Co., 1 Green, N. J., 110.)

III. A waiver of defects is not in law a waiver of substance. It is no proof at all if not made by the assured. The only man to make the proofs was the owner of the goods. He knew what interest he had in them, and was the only one who did. He agreed to give this proof, and the insurers had a right to have this ; and until such a proof was filed, signed and sworn to by the insured, there was nothing to waive. (St. Louis Ins. Co. v. Kyle, *supra ;* Ellis on Ins. 14 ; 3 Kent's Com. 376, and author-

ities. cited; Dawes v. N. R. Ins. Co., 7 Cow. 462; Bumstead v. Dividend Mut. Ins. Co., 12 N. Y. 81; Roumage v. Ins. Co., *supra*.)

IV. The court erred as to the admission of the testimony to prove that making hogsheads in the building was an incident to the business of tobacco-pressing, and erred in refusing to permit testimony showing increase of risk caused by making hogsheads in the building. There could have been no general custom known to the insured that such work was incident to the business. (Ang. Ins., §§ 20–3; Brown v. Cattaraugus Ins. Co., 18 N. Y. 385.)

V. The representation as to occupancy was a warranty, and false, and therefore avoided the policy. The defense was fully made out, and the jury must have found for the defendant but for the charge of the court and the refusal to put the case to the jury as asked for by the defendants. (Ang. Ins., § 147, and note 2; *id.*, §§ 159–62; *id.*, § 169, note 3; Leohner v. Home Ins. Co., 17 Mo. 255; Jennings v. Chenango Ins. Co., 2 Denio, 75; Deitz v. St. Louis Mut. Ins. Co., 38 Mo. 85; Hutchinson v. The Western Ins. Co., 21 Mo. 97; Woolmer v. Minlman, 3 Burr. 1419; Tesson v. Atlantic Ins. Co., 40 Mo. 33; Keen v. S. St. Louis Ins. Co., 40 Mo. 19; Chase v. Hamilton Ins. Co., 20 N. Y. 385; 3 Abb. Dig. 416; Wood v. Hartford Ins. Co., 13 Conn. 523.) The instructions given on this point did not put the case to the jury fairly. Under them the jury had no opportunity to investigate whether, under the testimony, there was such manufacturing, or any manufacturing, of hogsheads or anything else in the building, which would avoid the policy.

*G. W. Shields, Green & Porter*, and *Wilson*, for respondent.

I. The objection by defendant to the admissibility of the proof of loss itself was properly overruled: 1. Because the policy, in its condition, and the by-laws of the company, article 8, both recognize the validity of an agent's act in procuring insurance, etc. 2. If such construction was admitted, no person could insure any property over which he had not personal supervision, and with the destruction of which he was not thoroughly acquainted. in all its details, which proposition would prevent any

business being carried on by an agent.   3. If it should be the opinion of the court that the paper itself was defective, it was still admissible to show a compliance with the policy, as the defendants waived the defect by their conduct in receiving the same and not returning it to the assured and pointing out its defect; and further, by putting their refusal to pay on other grounds than such defect in said proofs, they waived the right to insist on such defect in bar of recovery.   (Ayres v. Hartford Ins. Co., 17 Iowa, 176, 196; Bonner v. Home Ins. Co., 13 Wis. 686; Newmarks v. Liverpool, etc., 30 Mo. 160–4; Phillips v. Protective Ins. Co., 14 Mo. 220–35; Warner v. Peoria M. & F. Ins. Co., 14 Wis. 323; 25 Wend. 382; 26 Ill. 365; 3 Comst. 128; 25 Ill. 470; 43 Barb. 351; Hosmer v. Protective Ins. Co., 2 Ohio St. 452–76.)   And this may be proved under an averment of performance of the condition.   (11 Mo. 278; 44 Penn. St. 259.)   4. Objection was made by plaintiff's counsel to the answering by experts (insurance agents) of this question: "If tobacco hogsheads were manufactured or set up in the building, what would be the increase of risk?" and to the defendant's showing, by experts, that the manufacturing and setting up of hogsheads, as described in the testimony of John F. Colvert, created an increase of the risk on the property insured.   The court properly sustained the objection to the introduction of such testimony.   (Newmarks v. Liverpool, etc., 30 Mo. 165; Protective Ins. Co. v. Hosmer, 2 Ohio St. 452; 45 Me. 168–171; 7 Wend. 72.)   5. Objection was made by the defendant's counsel to the question: "State whether, from your knowledge and observation, the setting up of tobacco hogsheads in the building where the tobacco is pressed, is an incident to the business?" The court properly overruled the objection, because, first, the contract of insurance covered the whole subject-matter of the business of tobacco-pressing if it covered that business at all, and it was material to know whether or not it was an incident to the business; second, it was not intended to control the contract by inconsistent parol testimony, but to show that it embraced the hazards of this and other incidents to the business; third, that the issue raised in the pleadings was whether or not the business

of setting up tobacco hogsheads was a separate, distinct, and more hazardous business than tobacco-pressing, or whether it was included within the scope of that business. The question whether or not such business was incident to the business of tobacco-pressing, was a question for the jury, and could only be ascertained by witnesses acquainted with the business. (Archer v. Merchants' and Manufacturers' Ins. Co., 43 Mo. 434; 6 Wend. 623-7; 20 N. H. 551; 17 N. Y. 194, 200; 26 Iowa, 9, 66; 2 Hall, N. Y., 490-2; Delonguemare v. Tradesmen's Ins. Co., *id.* 589, 616, 620, 624; 13 Gray, 139; Peoria Mar. & F. Ins. Co. v. Lewis, 18 Ill. 562.) 6. If it is held that the letter of plaintiff of April 6, 1866, was a proposition to pay off the note, the contract was complete on the acceptance of that proposition by the defendant in his letter of the 13th. (Mactier v. Frith, 6 Wend. 103, 149; Taylor v. Merch. Fire Ins. Co., 2 Dutcher, N. J., 268, 275, 279, 281, 283.) The proposition of payment first made by the defendant by its letter of April 13, 1866, was a waiver of the forfeiture of the policy, and the plaintiff had a right to accept it and send the balance due by return mail, as requested; and the defendant could not withdraw that proposition after he had sent the balance. If the loss had not happened, the defendant would undoubtedly have kept the money sent. The law will not allow them to be bound or not at their pleasure. The sending of the balance, as stated, was a consummation of the proposition, and, by relation, referred back to the letter of the 13th, waiving the forfeiture. (44 Penn. St. 263; 26 Iowa, 9-54, note; 3 Cow. 79; 29 Barb. 312-14; 25 Barb. 189-91; 7 R. I. 502, 506; City of Davenport v. The Peoria Mar. & F. Ins. Co., 17 Iowa, 276, 288; Krum v. Home Mut. Ins. Co., 42 Mo. 38-41.) 7. The fifth instruction asked by defendant was properly refused. The answer in the application to the question as to the occupancy of the premises being " tobacco-pressing; no manufacturing," evidently intended to mean that there was no manufacturing of tobacco as distinctive from the business of pressing tobacco. And the court properly instructed on the subject of " incident to the business," for the plaintiff. The application, so far as the building is concerned, was not a war-

ranty, as it was outside of the property insured, and does not affect this policy. If a warranty at all, it was only so as to the then occupation of the building, and was not a continuing warranty. (24 Ill. 455–61, and cases cited; 32 N. Y. 397, 401; 29 How., N. Y., 384; 17 Mo. 246–8; 20 Conn. 139–43; 7 Hill, 122.)

II. Even in simple contracts by mail, the proposer can not complain if the person to whom the proposal was made accepts in a reasonable time, or before actual notice of a withdrawal of the proposition, although the withdrawal was made long before the acceptance. The tender back of the money received acts in no way to rescind the renewal of the policy after forfeiture. Otherwise an insurance company might tender back the premium and evade the payment of every loss that happens. (See authorities before cited.)

BLISS, Judge, delivered the opinion of the court.

The plaintiff recovered judgment in the Hannibal Common Pleas upon a policy of insurance, which was affirmed in the District Court. The case seems to have been sharply contested, and in exceptions to evidence and in the multitude of instructions to the jury given and refused, the points are developed upon which the defendant's counsel seek to reverse the judgment.

The assured were required by the policy to give notice of the loss forthwith, and within three days to send to the office of the company a particular account of the loss, signed and sworn to by the assured. Notice was at once given, and an agent of the company appeared upon the ground, produced the usual blank for making the proofs, and giving the "particular account" of the loss, which was filled up under his directions and sworn to by E. W. Sims, as agent for the insured. This, it was claimed, was not a compliance with this requirement of the policy, but the court held otherwise.

There is no doubt that, under policies with such a requirement, it is the duty of the assured to furnish a sworn certificate of loss; and the performance of such duty is a condition precedent to a recovery. (Ang. Ins., §§ 225–6; Col. Ins. Co.

v. Lawrence, 10 Pet. 507; Noonan v. Hartford Ins. Co., 21 Mo. 81.) The special objection to the certificate, as furnished, arises from the fact that it was sworn to by his agent, and not by the assured himself. Under ordinary circumstances I should deem this a fatal objection; for it may with propriety be said that the owner is supposed to know not only his own loss, but also any secret reason why he should not be paid. The company contracted that he should take the responsibility of the oath, and if he was the one with whom they had personally dealt, who had knowledge of the matter, he would be bound to assume such responsibility. But to insist on it in this case would involve a defeat of the policy altogether. The insured was a resident of St. Louis, and the property was in Carroll county, under the exclusive management and control of the agent. The policy was obtained by the agent, the application was made and signed by him; the premium note was executed by him; he had other policies in the same company, obtained also as agent; in his whole correspondence with the company at their home office, and in his interviews with their agents, he acted as agent for the insured, and it does not appear that the latter was known to the officers of the company, or knew anything about the policies, or whether he had any. Under these circumstances, if the proof is not to be made by this agent it can not be made at all; and the position assumed by counsel places the officers of the company in the attitude of issuing policies and receiving premiums, knowing from the nature of the case that no legal proof could be made of the losses if they should occur. We will not place them in that position, but, on the other hand, hold that proof and certificate made by the man with whom they had all their dealings, who was in sole possession of the property insured, and who alone knew the facts necessary to be embodied in the paper — who, in fact, was, as it were, insured as agent — is a compliance with this requirement of the policy. (Ayres v. Hartford Ins. Co., 17 Iowa, 176.) If we thought otherwise, we could not hold the policy forfeited for that defect, for the reason that the company received the certificate, made no objection to it upon that account until the case came on to trial, long after the thirty days had expired; and, when pay-

ment was refused, placed the refusal upon other grounds.  (St. Louis Ins. Co. v. Kyle, 11 Mo. 278 ; Phillips v. Protective Ins. Co., 14 Mo. 220 ; Ayres v. Hartford Ins. Co., *supra ;* Taylor v. Merchants' Fire Ins. Co., 9 How., U. S., 300.)

· Another defense is founded upon an alleged default on the part of the insured in paying his premium note.  The policy expressly provided that when such note had been taken for a cash premium, any default in its payment should operate to suspend the company's liability upon the policy until it should be paid.  The note was due on the first day of April.  The insured having also a policy upon a stock of goods that had some months to run, and having sold the goods on the 6th of April, wrote to the secretary requesting that the policy be canceled, and asking for an allowance for the time the insurance was to run.  He then adds: "Am I indebted for insurance on tobacco ?  I can not find the policy, though I am sure there is something due.  Please send statement, as I wish to settle it."  This was answered by the secretary under date of the 13th, as follows: "Your favor of the 6th is at hand this A. M.  We cancel your policies of insurance on merchandise and return unearned premium, which is $21.30. We find a note against you of $32.50 principal and $1.21 interest.  Total, $33.70, less the amount of unearned premium due you, leaving a balance due us of $12.45, which you can remit with the inclosed receipt for unearned premium.  By return of mail you will also send us policy for cancellation.  Hoping all will be satisfactory, we are," etc.  On the first mail after receiving this letter, Sims replied, inclosing the receipt, the $12.45, the policy on the merchandise, and asking the secretary to remit the note paid.  But in the meantime — to-wit, on the night of the 13th — the tobacco had been burned, of which the company was at once notified.  Afterward the $12.45 and the money due for the unearned premium was tendered back, and on hearing of the fire, the secretary had notified the plaintiff not to send the $12.45.  Supposing the existence of these facts, the court instructed the jury to find the issue made in regard to the payment of this premium note in favor of the plaintiff ; and in this we think it committed no error.  This is a case of forfeiture for

a want of promptness in paying the premium note; and, if the law does not forbid, it certainly will not favor, but rather lean against, such forfeiture. It is hardly necessary, however, to invoke the aid of this familiar maxim, inasmuch as the payment of the note was actually provided for before the fire. Whether we consider the letter by the insured on the 6th as a proposition whose acceptance on the 13th, with the application of the unearned premium, operated as an adjustment, or the proposition by the insurance company on the 13th, which was afterward accepted by the insured, in either case the note was provided for before the loss, and the vitality of the policy restored. If we were to suppose that a forfeiture had occurred by the non-payment of the note, it is clear that if the company agreed to accept its payment in a particular way, and the proposition was at once and unconditionally accepted and complied with, the forfeiture was waived. No case has arisen where a forfeiture has been enforced under circumstances like the present. On the third day after the maturity of the note, the maker, not knowing how much would be actually due the company, proposes to pay, asking for a statement of the amount. The company at once applies upon the note the amount in their hands and directs him to remit the balance, which he does by the first mail. The waiver of the forfeiture was complete when they accepted his proposal to pay, etc., which was before the fire.

It appears that the policy covered certain fixtures in the building belonging at the time to the insured, but which had been transferred to the owner of the realty, and, in making his proof, the plaintiff embraced these fixtures as well as the other property. Counsel for defendant claimed at the trial that if the oath was willfully false, with the design of receiving more than he was entitled to, it was a fraud upon the company, which forfeited the plaintiff's right to recover anything; and the court, in an instruction submitted by them, sustained their view. If this conduct of plaintiff, as matter of law, was not susceptible of an innocent explanation, then, perhaps, we might disregard the finding of the jury upon it; but we can not so hold, and, having found that there was no fraud in fact, their finding can not be disturbed.

There is one point, however, raised by the record, less technical than those we have considered. The insurance was upon plaintiff's tobacco, in a certain building in DeWitt, Carroll county. In the application for the. insurance, and in answer to the question "for what purpose the building was used," the plaintiff replied, "tobacco-pressing; no manufacturing." The evidence shows that in a shed — an addition to the main building — the tobacco hogsheads were manufactured. This, it is claimed, was a concealment of the uses to which the building was put, was a breach of the warranty, and vitiated the policy. The plaintiff sought to prove that the business of making the hogsheads in which the tobacco was packed, was incident to and appertained to the business of pressing, and by general custom was included and understood to be included in the term "tobacco-pressing," without being specially mentioned. If such were the fact, there was no false warranty, and it was no more necessary for the plaintiff to state that branch of the business than any other. The officers of the company, in issuing the policy, should be supposed to know all the incidents of the business of the insured, and if there was any branch of it considered extra-hazardous, and which they were unwilling to cover by their contract, it should have been specially provided against. The law upon this subject has been recently considered by us in Archer v. The Merchants' and Manufacturers' Ins. Co., 43 Mo. 434, and it is quite unnecessary to review the general doctrine. Whether the preparation of the hogsheads was such an incident to the business as to be included in it, was a question of fact, and we have only to see if the subject was fairly presented to the jury.

The jury were instructed that the application was a warranty as to the condition and occupancy of the premises, that, if false, would make void the policy, and that the words quoted were an undertaking that there should be no manufacturing in the premises. But they were also further instructed in these words: "No. 7. The jury will find for the plaintiff on the fourth ground of defense set up in defendant's answer, if they find that the business of tobacco-pressing only was carried on in the building in which the insured property was contained, and that the only coopering done therein was that connected with, appertaining to, and

incident to the business of tobacco-pressing, although the jury may believe that said use for setting up of hogsheads was an increase of the risk."

Does this instruction present the question to the jury fairly? It seems to me not. It fails to present to their mind the true issue. First, for obscurity: the construction they might put upon it is that the court supposes that there is a class of coopering incident to the business, and they are to inquire whether the coopering complained of belongs to that class. The court seems to take for granted the main question in dispute. The sentence is obscure, and may bear another interpretation, but it is so drawn that the jury, especially · if inclined against the defendant, might very easily interpret it as assuming the chief proposition. Second, it does not give the jury to understand what facts they are to find in order to make any coopering incident to plaintiff's business.

The inquiry should be: whether it is so generally customary for those engaged in the business of tobacco-pressing to prepare their own hogsheads, and in the building where the business is conducted, that such preparation can properly be called an incident to the business. The existence of such a custom is an affirmative proposition, and must be affirmatively found. To illustrate: coopering is necessary for the manufacture of flour, whisky, powder, etc., and, in a loose sense, is incident to the business. So box-making is, in the same sense, incident to various kinds of manufacturing; but the making of flour or whisky barrels, or powder kegs, or boxes, can not be said to be so incident to the manufacture of flour, whisky, powder, or the articles to be packed in the boxes, as to be included in a general term applicable to such manufacture, unless by a general custom they are prepared in connection with and as a part of the business. If it be the custom among country millers to make their flour barrels in the mill, then the term "flour mill" or "flour-making" may be properly held to include the necessary coopering; but the existence of such custom should be clearly and distinctly put to the jury, and in no equivocal or ambiguous terms.

The other judges concurring, the judgment will be reversed and the cause remanded.