# REPUBLIC OF HAWAII *v.* W. J. COELHO.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED OCTOBER 1, 1897.     DECIDED OCTOBER 29, 1897.

JUDD, C.J., FREAR AND WHITING, JJ.

A new trial is ordered on the ground that one of the jurors who tried the case had not taken the oath to support the Constitution, Laws and Government of the Republic, as required by Article 101 of the Constitution,—neither the defendant nor his counsel having discovered that fact until after verdict or been negligent in not having discovered it before the juror was sworn.

A demurrer to an indictment for embezzlement upon various grounds and a motion to quash the same on the ground that it did not conform to the charge upon which the defendant was committed for trial, held properly overruled.

OPINION OF THE COURT BY FREAR, J.

The defendant was tried and convicted in the Circuit Court on an indictment for embezzlement and now comes here on numerous exceptions.

One of these exceptions was taken to the overruling of a motion for a new trial based on several grounds, one of which was that one of the jurors who tried the case had not taken the oath to support the Constitution, Laws and Government of the Republic of Hawaii, as required by Article 101 of the Constitution. This article provides that "no person shall be eligible to be * * * a Juror, until he shall have taken and subscribed" such oath. It was shown by affidavits and not disputed that the juror J. W. K. Keiki had not taken the oath

and that neither the defendant nor his counsel ascertained that fact until after verdict. It also appears, by the record, that the Deputy Attorney-General, who prosecuted the case, after questioning each of the jurors as to his qualifications, asked them as a whole several questions, one of which was "all of you have taken the oath to the Government?" to which no reply was made.

It is contended that the person who had not taken the oath was incapable under the Constitution of being a juror and hence was not a juror, and that therefore the defendant was tried by only eleven jurors and not by twelve as was undoubtedly his right. This appears to have been the view taken in *Shane v. Clark*, (a Maryland case referred to in Thomp. & Mer., Juries, Sec. 302). But the contrary appears to have been held in *Gilbert v. Rider* (a Connecticut case referred to in *Croy v. State*, 32 Ind. 389). In each of these cases, as in the case at bar, the juror had not taken the required oath. We have not access to the original report of either of these cases. A similar difference of opinion exists in respect of other disqualifications of jurors,—one class of cases holding that if the juror's disqualification is not discovered until after verdict, the moving party is entitled as of right to a new trial; the other class holding that the disqualification of a juror, though not discovered until after verdict, is not of itself sufficient to entitle a party to a new trial but that the granting of a new trial in such case depends upon the circumstances. See cases cited in Thomp. & Mer., Juries, *supra*, and 1 Thomp., Trials, Sec. 116; see also Graham & Waterman, New Trials, p. 221 *et seq*.

If the former view is correct, the defendant is clearly entitled to a new trial. Let us assume, however, without deciding, that the latter is the correct view. A question of great importance in determining whether a new trial should be granted is whether due diligence was exercised to ascertain the disqualification before the juror was sworn. If due diligence were not used, the party would be in much the same position that he would be in had he used due diligence and ascertained the disquali-

fication and made no objection before the juror was sworn, in which case he would generally not be entitled to a new trial. But if he had used due diligence and had not discovered the disqualification until after verdict, he would be entitled to a new trial, even though the disqualification did not go to the integrity or capacity of the juror and even though no actual prejudice had probably resulted to the party. In a case like the present it would be impossible to show whether he had been actually prejudiced or not. He would be prejudiced in law by being deprived of a legal right without his consent and through no fault or negligence of his own. He should be placed in the position in which he would be if he had ascertained the disqualification before the jury had been sworn and had objected to the juror and his objection had been overruled and he had excepted to the ruling. In such case he would be entitled to a new trial even though no actual prejudice could be shown to have resulted to him from the ruling. Not that he would be entitled to a new trial in all cases merely because he had been denied a legal right. For instance, the admission of improper testimony or the giving of an erroneous instruction against objection would generally be a denial of a legal right and yet not sufficient in all cases to call for a new trial. It makes a difference what the denied legal right is. We need not attempt to classify rights in this respect or to justify all the distinctions that are made. The authorities, whether right or wrong, are practically unanimous to the effect that a denial of the right to be tried by qualified jurors entitles the party thereby legally prejudiced to a new trial.

In general the test of due diligence in cases like the present is whether the juror was properly questioned upon his *voir dire.* His answers upon such examination may be relied on and if a party is misled thereby he may have a new trial upon discovery of the disqualification after verdict, though the disqualification is of a general character, from which no actual prejudice had probably resulted. *State v. Nash,* 13 So. (La.) 734; *Lamphier v. State,* 70 Ind. 317; *Hudspeth v. Herston,*

64 *Ib.* 133; *Watts v. Ruth,* 30 Oh. St. 32; *Buck v. Hughes,* 127 Ind. 46; *U. S. v. Christensen,* 24 Pac. (Utah) 618; *Wiggin v. Plumer,* 31 N. H. 251. The Texas courts, however, hold that even though the juror was questioned on his *voir dire* and misled the party, a new trial should not be granted unless it also appears that the party was probably prejudiced by the presence of the obnoxious juror upon the panel. *Brennan v. State,* 33 Tex. 267; *Leeper v. State,* 14 S. W. 398. But these decisions were based largely upon special provisions of the statute, and see the strong dissenting opinion in the latter case.

In the present case, as we have seen, the jury were asked if they had taken the oath to the Government. This question, it is true, was put by the prosecuting attorney, but it was not necessary that it should be repeated by the defendant. *Republic v. Hapa,* 9 Haw. 622. It is also true that the question was addressed to the jury as a whole. This method is often pursued under our practice and we see no particular objection to it where the question is as definite as that now under consideration and admits of such a definite answer. In *Hudspeth v. Herston,* and *Wiggin v. Plumer, supra,* the questions were put to the jury as a whole.

But no reply was made to the question. Was not the defendant negligent in not insisting upon a reply? Or was he justified in assuming that silence was equivalent to a reply in the affirmative? In *Wiggin v. Plumer, supra,* no reply was made. The court set aside the verdict, saying: "When the inquiry was made of the jurors, if either of them had heard much of the case, or had formed any opinion, Mr. Coffin (the juror in question) should have stated the facts, or excused himself." In *U. S. v. Christensen, supra,* an earlier case decided by the same court is referred to in which the jurors as a whole were asked several questions, to which no answer was made. They were then asked other questions by counsel for the defendant,— to which also no answers were made, and counsel added, "I will not put questions directly to any of you." He then asked several more questions and added: "You don't seem to an-

swer, and I will not put the question to any of you particularly." The court held there was negligence in not making sufficient inquiries. In commenting on this case, the court in *U. S. v. Christensen,* says: "No statement of the facts constituting the alleged offense was made to the jurors, and hence the court say, the jurors could not well have known whether they had an opinion as to the guilt or innocence of the defendant or not, and that, taking into consideration the timidity and apparent unwillingness of many jurors to answer questions unless they are individually interrogated it is not surprising that there was no response to the questions of defendant's counsel. The court was of the opinion that interrogating the jurors in such a general way was such negligence that the defendant could not, after an unfavorable verdict, successfully move for a new trial, when, with the proper diligence, good ground for a challenge of the juror would have been discovered." These two cases illustrate the diversity of views taken by the courts upon nearly every question that has arisen upon motions for new trials based upon the disqualification of a juror. On perhaps no one of these questions is there substantial unanimity of opinion, except upon the question above referred to respecting the right to a new trial where the party has been misled by the juror when interrogated as to his qualifications. Perhaps the case just referred to in which the court found a want of due diligence may be distinguished from the present case. There the questions asked assumed some knowledge of the case upon the part of the jurors, but no statement had been made to give them that knowledge. Here the question was such as could be easily answered by yes or no, and without any knowledge of the case. There the party or his counsel appeared to be somewhat dissatisfied with the silence of the jurors and yet chose to proceed no further. Here the opposite counsel, the prosecuting attorney, who asked the question, as well as defendant's counsel, appears to have been satisfied. But without relying upon these or other distinctions entirely, it seems to us that, if general questions are to be allowed at all, the silence of the jury, when such

questions are proper, may be relied on, unless there is something to show, or raise a suspicion, that the silence cannot be relied on. In such cases, it is the duty of a juror to speak, if he is disqualified, where the frame of the question calls for such an answer. Indeed, under such circumstances, it would be difficult to say whether one juror remained silent or not, if the others answered. Some might answer audibly, some by nodding, and all could not be observed or heard distinctly at once. No doubt considerable weight should be given to the opinion of the trial judge as to whether due diligence had been used. In the present case the trial judge in refusing a new trial apparently based his opinion, not upon any circumstances going to show that in this particular case an audible or visible answer to the question under consideration should have been insisted on, but upon the general proposition that such an answer should be insisted on always. On the whole while realizing that this is a point upon which there might naturally be a difference of opinion, we think that reasonable diligence was exercised in this case and that a new trial should be granted.

In view of our conclusion on the point already discussed, it will not, strictly speaking, be necessary to pass upon the other points raised, but we deem it advisable, nevertheless, to pass upon a few of them, more particularly such as relate to the form of the indictment and would be likely to come before this Court again in this case if not decided now.

The indictment was demurred to upon the following grounds which were overruled and one other ground which was sustained and remedied by an amendment.

1. That the indictment is uncertain and indefinite in that it charges embezzlement of $140 within six months next preceding the ninth day of February, 1897, and does not specify any date upon which the alleged embezzlement occurred. The time should be stated as definitely as convenient, but the exact date need not be stated. The statement in the indictment is sufficient in this respect. See 7 Enc. Pl. & Pr. 444; Comp. L. pp. 342, 345.

2. That the indictment is uncertain and indefinite in that it does not specify whether the $140 was the subject of one embezzlement or of more than one, and, if more than one, each is not pleaded distinctly. The statute makes it lawful to charge in the same indictment any number of distinct acts of embezzlement, not exceeding three, committed within the space of six months. Comp. L. p. 345. Only one embezzlement is charged. It was unnecessary to state that fact in words in the indictment.

3. That the indictment is uncertain, indefinite and insufficient in that it does not set forth in what particular office or employment in the District Court of Honolulu the defendant was employed. The indictment sets forth that the defendant was "a person employed in a Department of the Government of the Republic of Hawaii, to wit: in the Judiciary Department in the District Court of Honolulu." The words of the statute are "a person employed in any department of the government." Penal Code, Ch. 18. The employment is sufficiently set forth in the indictment.

4. That the indictment is insufficient in that it does not allege that defendant became entrusted with certain moneys of the Government by virtue of or under the authority of his employment in said District Court. The indictment, after setting forth the employment of the defendant as above, continues: "and as such person so employed, being entrusted by the consent and authority of said Government with certain moneys of said Government," &c. This averment is sufficient. It follows the statute.

5. That the indictment is insufficient in that it does not allege that it was and became one of the duties of the defendant to have, receive, handle or control any money of the Government under his said employment in the District Court. No such allegation was necessary.

6. That the indictment while purporting to charge embezzlement does in fact charge larceny, an offense for which defendant was not committed. The indictment clearly charges embezzlement.

The demurrer was properly overruled as to the above grounds.

An exception was also taken to the overruling of a motion to quash the indictment on the ground that it did not conform to the charge upon which the defendant was committed for trial by the District Magistrate. The alleged want of conformity consists in the omission of the words "Clerk and Interpreter" before the words "in the District Court." These words were unnecessary and the indictment need not follow the charge in the District Court verbatim, especially in unessentials.

The remaining exceptions were taken to the refusal to allow the jury to be drawn from the full number summoned, to the admission of certain evidence, the refusal to give certain instructions, the giving of other instructions, compelling of the defendant to testify in English, to the verdict as being contrary to the evidence, and to the refusal to order the jury to be polled. These exceptions raise questions that may or may not arise again in this case, or that may arise in different form if at all and we deem it best not to pass upon them now.

The exception to the overruling of the motion for a new trial upon the ground that one of the jurors was disqualified is sustained and a new trial is ordered.

*Dep. Atty.-Gen'l. E. P. Dole* for prosecution,
*C. Creighton* for defendant.