C. W. BOOTH, Trustee of the Estate of MALIE KAHAI, *v.* G. C. BECKLEY and Others, His Tenants.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED JUNE 27, 1898. DECIDED OCTOBER 10, 1898.

JUDD, C.J., FREAR AND WHITING, JJ.

Latitude allowed by the trial court on cross examination of a witness called by plaintiff, the answers to which tended to prove the defendant's case, is not reversiole error, unless it appears that the objecting party is prejudiced thereby.

Where a person enters land under color of title, under a mistake as to description and holds adversely, continuously, openly and notoriously for the statutory period, a title by prescription may be acquired by him.

This is an action of ejectment, tried in the Circuit Court of the First Circuit and a verdict therein rendered by the jury in favor of defendants. The plaintiff brings the case to us on a bill of exceptions, comprising some 24 points. The plaintiff claims in fee simple a piece of land in possession of defendants consisting of 1 6-10 acres which he alleges to be in Pahoa, Waikiki, Kona, Island of Oahu, which he claims the defendants have unjustly and contrary to the rights of the plaintiff taken into their possession, etc. It was conceded that plaintiff owned the land of "Pahoa" and defendant Beckley the land of "Kaluaolohe" adjoining, in which he alleges the land in dispute is and that he holds the same by adverse possession. It was conceded that the certificate of boundaries by the commissioner settling the boundaries of "Pahoa" was incorrect and that the survey of the award of "Kaluaolohe" was incorrect also and it did not close. Mr. W. A. Wall, surveyor, called for the plaintiff, testified that he abandoned the two surveys and on his best judgment found a line between the two lands mentioned. This line brought the disputed territory within the land of Pahoa. It was contended that the Wall line would cut through several kalo patches and he was asked on cross-examination of defendant the question: "Ordinarily do persons divide their lands, or do you find the ancient lands divided by lines that run into taro patches, so that there is an imaginary line dividing my taro patch from yours, that is, dividing the real patch, so that the leaves—one leaf of the taro may fall on my lands and the other leaf on yours?"

Also, "When they divide ancient land do you understand they divide the land so that the line runs through the middle of taro patches?" Both of these questions were allowed to be asked, under objection by plaintiff's counsel as being incompetent, irrelevant and immaterial. We think the questions were properly allowed. The subject of inquiry was to ascertain if possible the true and ancient boundary of the two lands. The

witness had put his judgment and experience in question in
having settled in his mind the true line between them and in
testing the accuracy of his judgment he was asked if ancient
boundaries ever cut through kalo patches. If they did not and
his line did, then the probability of his line being the true one
was lessened. The evidence also given by Mr. Wall as to the
dividing lines between lands in ancient times we think was rel-
evant and also the question as to kuleanas being usually award-
ed according to the previous possession of the claimant. This
disposes of exceptions 2, 3 and 4. Exceptions 5, 6, 7, 8 and 9
are all to the allowance by the court of questions put by de-
fendants' counsel on cross-examination to the witness Beckley
(defendant) who was called by plaintiff. He was asked by
plaintiff if he was in possession of the land involved in this suit,
which included an artesian well, and he answered that he was.
He was then cross-examined by defendants' counsel and testi-
fied as to his having bought the land sixteen years ago from
one Kioula and as to his knowledge of the length of his and
Kioula's possession. A question to Beckley during this cross-
examination objected to by plaintiff and allowed, was "Were
you informed of a lawsuit between Malia Kahai and Kioula
in regard to this piece of land?" This is exception 5. The
plaintiff contends that the cross-examination should have been
limited to the possession and not the ownership of Beckley, as
the only question put to him on the direct was whether he was
in possession. Whether the knowledge of Beckley of a suit be-
tween the respective ancestors in title was legitimate cross-exam-
ination it is unnecessary now to decide since the answer of Beck-
ley was that he had not heard of it when he bought of Kioula,
therefore the plaintiff was not thereby injured.

Exception 6 is to the allowance of a question on cross-
examination of Beckley as to what place Kioula pointed out to
him as the boundary between Pahoa and Kaluaolohe. We do
not understand that the object of this question was to prove the
actual boundary by hearsay, Kioula being alive, but in order to
show what Beckley actually received possession of from Kioula.

This was legitimate. This also disposes of exceptions 7 and 8, to the answer allowed made by Kioula to Beckley, which showed the extent and situation of the land Beckley was put in possession of. This brings us to exception 7 which disputes the admissibility of all of Beckley's testimony on the cross-examination. Plaintiff contends that defendant should not have been allowed to prove his defense of prescriptive possession on cross-examination, because it was new matter of defense not brought out on the direct. We have shown above that questions on the cross, thus far, seem to us to be pertinent to the question asked on the direct. They were circumstances explaining the possession and were admissible even though they tended to prove the defendant's case. *Jackson v. Litch,* 62 Pa. St. 451. The plaintiff took the risk of the defendant's being thus cross-examined when he made him his own witness. Latitude allowed by the court as to the extent of a cross-examination is largely in its discretion and should not be the subject of reversal unless clearly prejudicial to the complaining party. "The appellate court will not interfere unless that discretion is oppressively abused." 8 Encyc. Pl. & Pr. p. 110. Here, conceding for argument's sake that the cross-examination was not strictly pertinent to the question on the direct, it was certainly material evidence whether introduced in its proper order or not. The rule as to whether competent evidence admitted out of its proper order is ground for a new trial depends upon whether the plaintiff in this case, was injured thereby. If, for example, the plaintiff had rested immediately after the cross-examination of Beckley and the defendant had asked for and obtained a nonsuit, on the ground that the plaintiff's own evidence including the cross-examination showed no case and plaintiff's resting at that stage cut off his opportunity to rebut the evidence on the cross, courts hold that the nonsuit should be set aside and a new trial awarded. But here the plaintiff proceeded to put in his proofs tending to rebut the defense of title by prescription and all the evidence went to the jury.

In *Jackson v. Litch, supra,* Judge Sharswood says that he

had not been able to find a single case which had been reversed by his court on the ground that a party had been permitted to lead out new matters, constituting his own case, by the cross-examination of his adversary's witness.

We adhere to the so-called "American rule" that the cross-examination should be limited to inquiry into the facts and circumstances connected with the matters stated in the direct examination of the witness. But as it is frequently difficult to determine whether or not a given question relates to any matter brought out on the direct examination, of necessity much is left to the sound discretion of the trial judge. The contention of plaintiff that the introduction of defendant's proofs by the cross-examination of plaintiff's witness is in violation of statute prescribing the order of proof we do not consider sound, in view of the rule of law which gives to the judge the right to exercise a sound discretion as to the relevancy of the questions allowed to the matter testified to in chief. This view disposes of exceptions 9 and 10.

Exceptions 11 to 16 inclusive are all to the court's allowing numerous questions to be put to the plaintiff's witness Kauai. They appear to us to have been asked for the purpose of impeaching the witnesses' character for veracity and to show bias in favor of plaintiff. For example, Kauai was asked "You devote part of your time to looking up your neighbor's titles and finding flaws in them, don't you?" "Didn't you, not more than three days ago, make Mrs. Beckley pay twice for a piece of land of Moiliili for a man that had nothing to do with you?" "Did you know about Booth's going down to Kioula's house?"

The general rule of law being that much latitude is allowed in a cross-examination the object of which is to test the extent of the witness' knowledge, his feelings of bias, prejudice, hostility, interest, accuracy of memory, &c., in order that the jury may estimate correctly the weight to be given to his testimony, we cannot interfere unless we find that the court abused its discretion in allowing the questions, and we do not so find.

Exception 17, to allowing a witness to be asked if on a certain

date he told the truth, is of too little importance to be considered. Exception 18 is to refusing to allow plaintiff to be asked if he knew "why it was that suit was not brought before by Cummins about his well." It was of no consequence to the jury why suit was not brought earlier and the question was properly refused. Exceptions 19 to 24 inclusive are to the court's charge and to its refusal of certain of plaintiff's instructions.

Exception 19. The papers in a case entitled *Kioula v. Maria Kahai* decided in the Intermediary Court of Oahu in August, 1878, being an action of trespass on the land in controversy wherein plaintiff (present defendant's grantor) recovered damages from the defendant (plaintiff's devisee in trust) were introduced in evidence by defendant. The court ruled that it was not a bar to the action but the testimony of witnesses therein, now dead, was evidence tending to show that Kioula claimed the land in controversy openly and notoriously. In this view the plaintiff withdrew his objection. The trial court's view of the effect of the decision referred to was that it found that the land was within the boundaries of Pahoa and the defendant's privy in this case had acquired title by adverse possession. The evidence on both these points was left to the jury.

Exceptions 20 to 24 may be summed up as follows: Plaintiff requested that the court should charge as law that possession cannot be adverse to another unless intended to be so, and if possession is acquired under a mistake of fact as to the boundary, th. possession cannot be adverse against the true owner. The court did charge as follows:

"The element of hostility to the title of the true owner is an indispensable ingredient of adverse possession. The possession must be accompanied by an intention to claim as one's own. There must be a claim of title hostile. Thus, it is not sufficient to establish adverse possession even if one occupies land and is not disturbed, if as a matter of fact he holds the land under and by permission of the true owner, because such holding would be subservient to the true owner.

"I have been asked by plaintiff to charge you that if possession was acquired under a mistake of fact as to the true boundary that such is not in law adverse possession as to the premises so held by mistake. That, gentlemen of the jury, I charge you not to be the law. Though the intention of possession to claim adversely is an essential ingredient, yet if the person enters on the land belonging to another, claiming it as his own, even though under mistake, he does so enter and possess adversely. It is an assertion of one's own title, and a denial of title in all others. In this connection I would like to read to you the following extract:

"The protection of possession taken under mistake accords certainly with the policy of the law imposing limitations to actions for the recovery of real property, as well as upholding, through such limitations, a possession tortiously taken and continued for the requisite period with full knowledge, on the part of the occupant, of the rights of the true owner."

We think the charge was right. When a person enters land under color of title or under a mistake as to description and holds adversely continuously, openly and notoriously for the statutory period, a title by limitation may be acquired by him. *French v. Pearce*, 8 Conn. 439. We may add that in the case before us it was not specially found by the verdict that the land in dispute *was* within the true boundaries of the plaintiff's land of Pahoa. The verdict being a general one for defendant does not necessarily decide that the plaintiff has the paper title to the disputed land, or that Kioula entered under a mistake.

We overrule the exceptions.

*J. A. Magoon, R. D. Silliman* for plaintiff, *E. B. Mc-Clanahan* with them.

*Kinney & Ballou* for defendants.