*Kinney, Ballou & McClanahan* and *H. A. Bigelow* for plaintiff.

*T. McCants Stewart* for defendants.

---

# ARTHUR G. MERRICOURT *v.* NORWALK FIRE INSURANCE COMPANY.

## EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED JULY 16, 1900. DECIDED DECEMBER 31, 1900.

FREAR C.J., GALBRAITH, J., AND CIRCUIT JUDGE STANLEY, IN PLACE OF PERRY, J., ABSENT.

1. The latitude allowed to counsel in the cross-examination of witnesses is largely in the discretion of the trial court, and is not a proper cause for reversal, unless such discretion has been oppressively abused.
2. Where proofs of loss are prepared in the office and under the advice, aid and instruction of the company's authorized agent, the company thereby waives the right to object to defects in the proofs.

3. Evidence of previous fires in which the plaintiff had suffered loss and collected insurance, not admissible, unless the previous fires were a part of a system of frauds of which the fire in question was an essential step.

4. An instruction asked by the defendant and modified by the court and given in the following language, "If you find that the insured did not truly state his interest in the property covered by either of the policies, as by stating that he owned property which in fact belonged to his wife, and did so deliberately knowing the statement to be false, then such policy is void and the plaintiff cannot recover"—held to be a correct statement of the law.

5. The trial of the cause commenced on Tuesday and closed Saturday evening; on Friday morning defendant's agent and attorney learned of certain rumored misconduct of one of the jurors indicating, on the part of the juror, strong bias and prejudice against insurance companies. No notice of this fact was brought to the attention of the court, and the trial continued to verdict without objection. Held, that the defendant did not use proper diligence to entitle it to make the alleged misconduct of the juror the basis of a motion for a new trial; that by silence and inaction it waived such right, if any existed.

### OPINION OF THE COURT BY GALBRAITH, J.

Action of assumpsit upon two policies of insurance to recover for loss of plaintiff's dwelling house and contents destroyed by fire at Honolulu, Island of Oahu, on the 7th day of November, 1898. Both policies were issued by the defendant jointly with the English-American underwriters. The one insured plaintiff's residence in the sum of $2250., and his carriage house for $250., against loss by fire for the term of three years from the 15th day of April, 1898, and the other insured the contents of the residence in the sum of $3000. for the same period from the 7th day of May, 1898. Each policy contained a provision that in case of loss and suit on the same, action might be brought "against either of them," and by order of the court the two suits were consolidated and tried as one action, but separate verdicts were rendered.

The defendant in its answer traversed the allegations of the petition and gave notice that fraud was relied on as one of the

defenses to the action. The cause was tried to a jury and verdicts returned against the defendant on the policy covering the house for the full amount claimed, $2250., and on that covering the contents for $2860., with interest from the date the demands accrued.

The defendant comes here on exceptions alleging sixty-nine separate and distinct errors of the trial court. The greater number of these are exceptions to the ruling of the Circuit Judge on the admission and exclusion of evidence offered. Several of the exceptions were abandoned at the oral argumnt, still we do not think that this court will be expected to take up each of the numerous exceptions and pass upon them separately, especially when they can be grouped under heads and the principles applied. We are inclined to follow the division made in the defendant's brief in our consideration of the case.

*First.* It is contended that the "defendant was denied the latitude to which it was entitled in endeavoring to prove fraud, and that it was also denied the right of asking, on cross-examination, questions intending to impeach the witness, or to test the veracity, memory or credibility of the witness." The transcript of the testimony in the case covers 388 typewritten pages. The direct and redirect examination of the plaintiff extended over 35 pages of this record, while his cross and recross examination covers 140 pages. The direct and redirect examination of Mrs. Merricourt covers 17 pages, while her cross and recross examination extends over 92 pages. From these facts it is apparent that the defendant was allowed considerable latitude in its search for fraud. Under the law the latitude allowed to counsel in the examination of witnesses is left largely to the discretion of the trial court, and the appellate court is not inclined to reverse a judgment on this ground unless the discretion has been clearly abused.

The Supreme Court of the Republic of Hawaii announced the correct rule on this subject in the case of *Booth v. Beckley,* 11 Haw. 521, as follows: "Latitude allowed by the court as to the extent of cross-examination is largely in its discretion and

should not be the subject of reversal unless clearly prejudicial to the complaining party," and in the same connection quote with approval from 8 Enc. Pl. & Pr. p. 110, the following statement: "The appellate court will not interfere unless the discretion is oppressively abused."

After reading the voluminous transcript and a careful consideration of the exceptions included under this head, we are not prepared to say that the trial court abused the discretion vested in it in the latitude given counsel for defendant in the search for fraud, much less are we willing to declare that this discretion was oppressively abused. Although we do find that the trial judge was clearly in error in some of the rulings on the admission and exclusion of evidence complained of, still we do not consider these errors of sufficient gravity to justify us in setting aside the unanimous verdict of the jury and remanding the cause for a new trial. The exceptions embraced under this head, to-wit, 1, 2, 3, 4, 7, 8, 9, 10, 11, 12, 18, 22, 23, 26, 29, 33 and 35 are overruled.

*Second.* It is contended that the defendant was denied the right of introducing in evidence a stenographer's transcript of previous contradictory statements made by Mr. and Mrs. Merricourt or of examining them thereon. Although the ruling of the court may have been influenced to some extent by the deceptive method employed by defendant's agent in getting this statement, the record shows that the stenographer who was present at the examination made a transcript of his notes of such examination and testified, concerning such transcript, at the trial. Exceptions 19, 21 and 47 are not well taken and are therefore overruled.

*Third.* The defendant complains of miscellaneous rulings on evidence and, under the rule announced hereinbefore, we are of opinion that the discretion vested in the trial court was not oppressively abused. Exceptions 36, 37, 38, 39, 42 and 43 are therefore overruled.

*Fourth.* It is contended that the denying defendant's motion for non-suit and modification of the instruction requested

by defendant set out in exceptions 67 and 68 was error. The motion for non-suit on the policy covering the contents of the building was based on the ground of misrepresentation of the ownership of the property, that a "considerable portion of the property sworn to in the proof of loss as belonging to Mr. Merricourt was in fact the property of his wife," and the motion on the policy covering the house was on the ground that the plaintiff failed to furnish defendant verified plans and specifications of the building destroyed. The stipulation in the policy which required the assured in case of loss to furnish the company verified plans of the building was a condition placed there for the benefit of the company, and a strict compliance with the same might be waived by the insurer or by its authorized agent acting within the scope of his authority. The evidence shows that within a few days after the fire the plaintiff, at the request of the defendant's agent, delivered rough plans of the building; that these were accepted and retained by the said agent and were not returned to plaintiff, nor was he notified that they were not sufficient or satisfactory until months afterwards. This was a substantial compliance by the assured with this stipulation and a waiver, on the part of the insurer, to insist on a more strict compliance.

"An agent duly authorized may bind the company by an express waiver of proofs," * * * "and an agent intrusted with policies signed in blank, and authorized to fill out and deliver them, may waive proof of loss." Joyce, Ins., vol. 1, par. 583; *Owens v. Farmers, etc., Ins. Co.* 57 Bar. 578.

The instruction asked by defendant was as follows: "If you find that the assured did not truly state his interest in the property covered by either of the policies, as by stating that he owned property which in fact belonged to his wife, then such policy is void and the plaintiff cannot recover." This was modified by the court by inserting after "wife" the following phrase, "and did so deliberately knowing the same to be false," and as so modified was given.

Mr. Justice Strong, speaking for the Supreme Court of the United States on this subject, said: "It is true the policies stipulated that fraud or false swearing on the part of the assured should work a forfeiture of all claim under them. The false swearing referred to is such as may be in the submission of preliminary proofs of loss, or in the examination to which the assured agrees to submit. But it does not inevitably follow from the fact that there was a material discrepancy between the statements made by the plaintiffs under oath in their proofs of loss and their statements when testifying at the trial that the former were false, so as to justify the court in assuming it and directing verdicts for defendants. It may have been the testimony last given that was not true, or the statements made in the proofs of loss may have been honestly made though subsequently discovered to be mistaken. It is only fraudulent false swearing in furnishing the preliminary proofs, or in the examinations which the insurers have a right to require, that avoids the policies, and it was for the jury to determine whether that swearing was false or fraudulent." *Ins. Co. v. Weides,* 14 Wall. U. S. 382-383.

"Where the preliminary proofs are prepared with the advice, aid or instructions of the company's authorized agent, such acts will operate as a waiver of defects therein, for if a party complies with the agent's instructions, more cannot be required. And where the assured acts in good faith and the agent with his assistance prepares the proofs, they do not conclude the assured. So the local agent aids the assured in preparing such proofs, and the company retains them without objection for four months, and until suit is brought upon the policy, the company cannot object." Joyce, Ins., vol. 1, par. 587; *Sims v. State Ins. Co.,* 47 Mo. 54; *Security Ins. Co. v. Fay,* 22 Mich. 467.

"The provision in a policy that any fraud or attempted fraud on the part of the assured in making the preliminary proofs shall forfeit all claim against the company is a valid stipulation. An intent however must exist, and the general rule seems to be that the statement must be a willfully false one concerning some material fact and made with the intent to deceive the insurer, in order to work a forfeiture." Joyce, Ins., vol. 4, par. 3339, and numerous cases cited in note.

"So when the mistake of the insured was in his ignorance of the English language, and the statement was under the direc-

tion of the person who aided him in making the proofs, and it appeared that it was not made by the insured willfully or with any intent to defraud the company, there was held no forfeiture." Joyce, Ins., vol. 4, p. 3221; *Doggs v. Northwest Nat. Ins. Co.*, 49 Wis. 501.

"False statements, in order to come within the purview of the policy in this particular, must have been made *intentionally and willfully*. 13 Am. & Eng. Enc. Law, 2d ed. 342 (b), and numerous cases cited in note.

"A fire policy provided that in case of loss the insured should submit to an examination under oath, if required by the insurer, and that any fraud or false swearing by the insured should avoid the policy. Upon an examination so had the insured included in his statement of loss a sewing machine which had not been destroyed. In an action on the policy he testified that at the time of making such affidavit he thought that the machine had been burned, but that he afterwards ascertained to the contrary. The machine was subsequently discovered in an outbuilding, underneath some wood, admitted to have been drawn and piled by the insured the day before the fire: held that an instruction that the policy was voided by the false statement of the insured was properly refused." *Knop v. Nat. Fire Ins. Co.* 107 Mich. 323.

Other authorities are *Tubbs v. Dwelling House Ins. Co.* 84 Mich. 646; *Boyd v. Royal Ins. Co.* 111 N. C. 372. In view of these authorities it seems that the motion for non-suit was properly denied and that the instruction offered was correctly modified to state the law. The exceptions are overruled.

*Fifth.* It is further contended that the court erred in sustaining the objection to hypothetical questions asked of the alleged expert witness relative to previous fires and losses sustained by the plaintiff and also to the proofs of loss in such fires when offered as evidence of fraud.

"When the question at issue," says the Supreme Court of Massachusetts, "was as to whether the note sued on was forged, the defendant offered testimony of the declaration of the plaintiff as to his ability to imitate signatures. The court, in holding the evidence incompetent, said: "We are of opinion that the court rightly rejected this evidence. In cases where a person is

accused of a crime it is not competent to show as evidence of the *corpus delecti* that he has committed similar offenses, or that he is of bad character, or that he has the capacity and means of committing the crime. The argument in favor of admitting such evidence is plausible. It might aid the jury if they should know the character of the defendant, whether he is a man morally and physically able and liable to commit the crime, but the law excludes such evidence on the grounds of public policy, to prevent the multiplication of issues in a case and to protect a party from the injustice of being called upon without notice to explain the acts of his life not known to be connected with the offense charged.

"If the fact that a defendant had committed a similar crime is not admissible, it is difficult to see how less pregnant evidence that he had the disposition or capacity and means to commit it, can be competent." *Costello v. Costello,* 139 Mass. 288.

"It is considered in general that no reasonable presumption can be drawn as to the making or the execution of a contract by a party with one person in consequence of the mode in which he has made or executed similar contracts with other persons." 1 Phillips on Ev. (1849 Ed.) 460.

The Supreme Court of Massachusetts announced the correct rule on this subject in *Fowle v. Child,* 164 Mass. 213, where it is said: "Acts which are part of one general scheme or plan of fraud, designed and put into execution by the same person, are admissible to prove that an act which has been done by some one was in fact done by the person who designed and pursued the plan if the act in question is a necessary part of the plan." Citing numerous cases.

In a later case the same court, passing upon an exception to the ruling of the trial court excluding evidence of previous fires, said: "The issues upon which the excluded evidence was offered was raised by the defendant's allegation that the fire was set by the plaintiff, and by his procurement and with his consent. The offer was to show that two fires had before occurred in which the plaintiff and his brother who the jury might have found had some interest in the loss for which this suit was brought,

15.

had met with losses for which they had secured insurance, and that nine other fires had also previously occurred in each of which some relation or relatives of the plaintiff had met with losses covered by insurance, for which they received payment of insurance. There was no offer to show that any of these fires were set by the plaintiff or by his procurement. All of these fires except the first two were occurrences in which the plaintiff had no interest, and all of them were plainly *res inter alios.* The first two fires were independent of each other, one occurring in the year 1888 and the other in the year 1891, and neither of them was connected with the fire now in question, which occurred in the year 1893. If all of the fires were parts of attempted frauds, they were clearly independent frauds, and not part of a system of fraud of which the fire in question was an essential step. None of the evidence which was excluded was admissible." *McDowell v. Conn. Fire Ins. Co.* 164 Mass. 396.

In the case of *Protective Ins. Co. v. Harmer,* the Supreme Court of Ohio in a well considered opinion passed upon the two questions presented under this assignment; one section of the syllabus of this case reads: "The opinion of witnesses engaged in the business of insurance, as to the materiality of the fact, that the building insured had shortly before been on fire, and the effect it would have had upon the mind of a prudent underwriter, if communicated, are not admissible in evidence." 2 Oh. St. 452, and in the opinion the reason for such holding is given that the evidence would simply amount to the opinion of the witness in relation to a fact that the jury is fully competent to pass upon.

On the question of concealment of material facts see *N. Y. Bowery Fire Ins. Co. v. N. Y. Fire Ins. Co.,* 17 Wend. 359.

These exceptions are overruled.

*Sixth.* It is alleged that the motion for a new trial on the grounds of the alleged misconduct of one of the jurors, should have been granted. We are not inclined to reverse the ruling of the Circuit Judge on this point under the rule announced by the Supreme Court of the Republic of Hawaii, wherein Mr. Justice

Frear, speaking for the court, said: "A question of great importance in determining whether a new trial should be granted is whether due diligence was exercised to ascertain the disqualification before the jury was sworn. If due diligence was not used the party would be in much the same position that he would be in had he used due diligence and ascertained the disqualification and made no objection before the jury was sworn, in which case he would generally not be entitled to a new trial." *Rep v. Goelho*, 11 Haw. 214-5.

The affidavit and application for a new trial shows that the defendant and its counsel knew of the alleged misconduct of the juror on Friday morning, the second day before the end of the trial; that they did not call the attention of the court to the rumor but continued with the trial. As the defendant remained silent and continued with the trial after the knowledge of the alleged misconduct of the juror came to it and made no attempt to call same to the attention of the court until after the verdict of the jury was returned against it, we think that due diligence was not shown and that by such silence and inaction the right to a new trial on this ground, if any existed, was waived and lost.

The exceptions to the charges of the court to the jury other than 67 and 68, have not been argued in the brief and are, we assume, abandoned. It appears from the record that the defendant offered no affirmative evidence of fraud but relied entirely on the cross-examination of the plaintiff and his wife to establish this branch of the defense. The court, it seems, gave to defendant proper latitude and submitted the question of fraud to the jury under proper instructions and the verdicts were against the defendant.

We find no sufficient reason for reversal. The exceptions are therefore overruled and judgment affirmed.

*A. S. Humphreys* and *J. T. De Bolt* for plaintiff.

*Kinney, Ballou & McClanahan* for defendant.